STATE of Wisconsin, Plaintiff-Appellant,

v.

John L. GOYER, Defendant-Respondent.†

Court of Appeals

*No. 89–1453–CR. Submitted on briefs June 21, 1990.—Decided
August 1, 1990.*

(Also reported in 460 N.W.2d 424.)

†Petition to review dismissed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Stephen J. Centinario, Jr.,* assistant district attorney.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Richard H. Bussler, Jr.,* of *Polidori & Bussler* of Milwaukee.

Before Nettesheim, P.J., Brown and Scott, JJ.

BROWN, J.   The state appeals from an order granting John L. Goyer's motion to dismiss three counts of battery to a police officer, sec. 940.20(2), Stats. We reverse.

The issue is whether the fourth amendment permits a police officer investigating a possible crime to physically restrain, without an arrest, a person who walks away from the officer's investigation. We hold that a police officer does not violate the fourth amendment's protection against unreasonable seizure in this situation, so long as an objective view of all the circumstances shows that the officer was conducting a legitimate investigatory stop and that the officer had not completed the investigation.

On June 10, 1989, at approximately 11:00 p.m., Officer Brian Gasse investigated a homeowner's complaint that a vehicle had crashed into a tree in the homeowner's yard. A pickup truck had its tailgate smashed against a tree approximately ten feet off the roadway in the yard of the complainant. The officer noted that the keys were in the ignition, the engine was still running, the headlights were on, and a partially emptied bottle of beer was in the truck.

While Officer Gasse was running a registration plate check to determine the owner of the truck, a woman carrying a child came from the house across the street. Officer Gasse detected an odor of intoxicants on her breath and noted that her speech was slurred and her balance unsteady. He asked the woman if she knew who was the owner of the truck. She said that it belonged to her husband, that he had been in the truck earlier but had not been driving it, and that he was in the house across the street. During the discussion with the woman, the police dispatcher informed Officer Gasse that the vehicle was registered to John Goyer.

At that point Goyer came out of the house across the street and walked over to Officer Gasse. Officer Gasse asked Goyer for his driver's license, but Goyer did not have the license with him. Then Officer Gasse asked

Goyer to identify himself verbally. Goyer became boisterous and challenged the officer's right to question him, but did say that he was the owner of the pickup truck.

Officer Gasse detected a strong odor of intoxicants on Goyer's breath and noted that Goyer had bloodshot eyes, slurred speech and unsteady balance. In response to the officer's second request that he identify himself, Goyer directed abusive and profane language at the officer. However, he identified himself as John L. Goyer.

Goyer continued to respond in an angry, abusive, and profane way to each of the officer's questions about how the truck had gotten there and why the keys were in the ignition. After several of these exchanges, Goyer indicated he would not stay there for any more questions by Officer Gasse. He also said he was going to get his attorney, turned away from the officer, and started to run toward the house across the street. Officer Gasse told him to stop. Goyer turned around and directed a profane gesture accompanied by more abusive and profane language at Officer Gasse. Again Officer Gasse told Goyer to stop. When Goyer continued to run away, Officer Gasse chased him and caught him in the driveway of the house across the street.

Officer Gasse made several efforts to detain Goyer by grabbing the defendant's arm and telling him to stop. Each time Goyer yanked the officer's hand off his arm and directed abusive language at the officer. After the third time that Officer Gasse grabbed his arm, Goyer punched the officer. When Officer Gasse continued to chase him, Goyer punched the officer a second time. Officer Gasse then informed Goyer that he was under arrest and radioed for assistance. Goyer punched and kicked Officer Gasse again, and punched or kicked each of the assisting officers before they were able to handcuff him.

Goyer was charged with three counts of battery to a peace officer, sec. 940.20(2), Stats., and one count of resisting arrest, sec. 946.41(1), Stats. He filed a motion to dismiss and the trial court granted the motion holding that, although Officer Gasse was acting in his official capacity, he acted unreasonably.

■ The state argues that Officer Gasse's action of grabbing Goyer's arm after Goyer walked away from the investigation passed the fourth amendment test of reasonableness. When the issue on appeal is a constitutional question, the reviewing court conducts an independent examination of the circumstances of the case. *State v. Goebel,* 103 Wis. 2d 203, 209, 307 N.W.2d 915, 918 (1981).

■ The initial questioning of Goyer by Officer Gasse occurred during a consensual encounter which Goyer initiated. No fourth amendment issue arises in a consensual encounter because no seizure has occurred. A seizure occurs only "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554 (1980). A seizure did occur, however, once the officer ordered Goyer to stop and grabbed his arm. *See Terry v. Ohio,* 392 U.S. 1, 19 (1968).

■ A seizure is subject to the reasonableness requirement of the fourth amendment. *Goebel,* 103 Wis. 2d at 208, 307 N.W.2d at 918. The test of reasonableness for an investigatory stop is whether the officer has an articulable suspicion that the person has committed or is about to commit a crime. *Terry,* 392 U.S. at 21–22. In Wisconsin, sec. 968.24, Stats., gives expression to the

*Terry* requirements. *State v. Jackson,* 147 Wis. 2d 824, 831, 434 N.W.2d 386, 389 (1989).

Officer Gasse's questioning of Goyer during the consensual encounter raised an articulable and reasonable suspicion that Goyer had violated the law. The truck appeared to have been driven recently. Goyer came from the house where the woman indicated that the owner of the truck could be found. Goyer identified himself as the owner of the truck. There was evidence that Goyer had been drinking alcoholic beverages. There was an open bottle of beer in the truck. Thus, when Goyer terminated the consensual encounter, Officer Gasse had a legitimate basis to initiate a *Terry* stop.

Goyer contends that he had the right to terminate Officer Gasse's investigation. We presume his argument is founded upon the idea that since the initial encounter was consensual and since there was no probable cause to believe he had committed a crime, he was free to walk away. We hold, however, that a person does not control the duration of an initially consensual encounter once that person becomes a valid suspect. At that point, the *Terry* rule applies. The rule states that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer,* 460 U.S. 491, 500 (1983). If a consideration of all the circumstances shows that the investigation has not been completed, a suspect does not have a right to terminate the investigation.

Officer Gasse's investigation of Goyer was not finished when Goyer refused to follow Officer Gasse's command to stop. Officer Gasse still had unanswered questions about how the truck 'had arrived at its location against the tree and why the keys were in the ignition. Without any evidence that someone else had put the

keys in the ignition or that someone else had driven the truck into the tree, it was reasonable for the officer to stop the owner of the vehicle to ask him these questions. While Goyer could have refused to answer Officer Gasse's questions, he could not simply walk away.

The state contends that Officer Gasse had the right to physically restrain Goyer in order to continue the investigation. We agree. An officer conducts a *Terry* stop when there is not yet probable cause to arrest a suspect. The right to make a *Terry* stop would mean little if the officer could not restrain a suspect who attempts to walk away from the investigation.

Thus, we need not decide whether the evidence that Goyer violated the law had risen to the level of probable cause and would have justified an arrest prior to the altercation between Goyer and Officer Gasse. We hold that Goyer did not have the right to control the duration of the investigation, and that it was not a violation of the fourth amendment for Officer Gasse to grab Goyer's arm in order to continue the investigation.

*By the Court.*—Order reversed and cause remanded.